Okay, our last case for argument is Souley v. Holder. Are they available by phone? Call cannot be completed as dialed. You're up, Ben. This doesn't sound very good for just cheering me on, does it? Yeah. I better get my hotel room back. Go get a weather... Turn the volume up. Hello? Hello? Yes, good afternoon. Can we... Can it be made a little louder? Yes, good afternoon. Good afternoon. So, are you Mr. Nameka? Yes, I am. Okay, well, you're on. And this is the Souley case. Hello? Well, we have transmission problems. Okay, I can hear about every two out of three words that you're saying. Okay, well, I'll try to speak. We'll try to speak loudly. Okay, so anyway, why don't you go ahead. You're first up. Thank you. Counsel, counsel, could you tell us where you are? Yes, your honor, I am in Indianapolis, Indiana. All right, thank you. Okay. Thank you. Thank you, your honor. May it please the court. My name is E. K. D. Bowden Nameka. And I'm here on behalf of the petitioner in this case, Saleh Souley. And we're here to ask the court for relief. In his case, he asked for a continuance, a brief continuance, within which to file another petition, on which he was going to base his petition for adjustment of status. And it's his contention that the immigration judge in his case abused his discretion in denying the continuance. And that abuse resulted in actual prejudice against him. And as a result, he was found to be removable by the immigration judge. And that decision was affirmed by the Board of Immigration Appeals. No sound reasoning was given for the denial. And as a result, Mr. Souley contends that that denial cannot stand. And his case should be remanded with instructions that he be allowed to submit another I-130 petition, upon which to ask for adjustment of status in his immigration application. I'm sorry. Your Honors, no. He was encountered by immigration agents around 2005. He came to the attention of immigration in 2005 when he was in Pennsylvania during a sweep. And after, no, he came into the country around 2005, but he was encountered by immigration agents around 2008. And his case was initially set for a hearing. And after it was continued, there was some confusion as to whether or not he actually had notice of hearing. At any rate, when the first hearing was held in Pennsylvania, he did not appear. So there was a ruling, a first ruling made in his absence, that he was removable. And at that point, he had presumably continued on with his life, not really understanding that there was disorder in place. He ended up finding a young lady somewhere else, and they proceeded to get married. After their marriage, the lady was a U.S. citizen, and he wanted to then adjust his status to become a permanent resident. And he was going to use her status as a means by which to do that. He submitted the petition concurrently, and when he went to do his first interview at the Indianapolis Seattle office, there, during his interview, he was encountered by agents of immigration enforcement, and they took him into custody. After they took him into custody, he was taken to the detention center in Ewing, Illinois. And at that time, his counsel asked for the proceedings in Philadelphia to be now moved closer to where he was in Illinois. That motion was granted, and he found himself then in removal proceedings in Illinois. And during those proceedings, he first had a bond review, where the bond was set at around $1,500, I believe exactly $1,500. And after the review, he was given a chance to post bond, and if he did post bond, he would come back for his master hearing. He ended up in immigration detention for about five months. And after he was released, sometime between his release and his first master hearing, the immigration service, they denied his petition. They denied his petition for adjustment, and they also denied the I-130 petition submitted on his behalf by his citizen wife for a couple reasons. One, that the standard by which they were to prove that marriage was not entered into for immigration purposes was not met. They imposed a clear and convincing standard. However, he only was able to, or he only submitted documents with the idea that he only had to meet the preponderance of the evidence standard. And then there was also some question as to whether or not his prior marriage in his home country, Niger, was properly ended. So they took exception, or they had issue with those two points, which was why the I-130 was ultimately denied. En route to the first master hearing in July of 2013, he was able to get together the funds and the proper legal counsel to prepare a new petition that was to be submitted, one that would then guarantee his chances of having his petition approved and his request for adjustment of status granted. He did not choose to appeal the denial of his wife's I-130 petition because he felt that if he submitted a new petition, that would reach the standard that was required, as opposed to go through the lengthy appeal process, that would give him a better chance of getting the relief he was looking for in a more timely manner. And that's why he did that. When they got to the hearing, the first master hearing, it was under the impression, as is the usual general practice of our immigration courts, that he would simply be advised of the notice to appear again and also the prospective relief that was available to somebody in his position. And then after that, he would come back for another hearing to present any additional evidence and let the immigration judge know what step he wanted to take next. Again, this is the first hearing he ever had before an immigration judge. And his wife was also there present in court, ready to give testimony to corroborate the fact that they had done their best to have the petition ready and able to be filed on that day. They had the filing fee, they had everything. However, when they reached the court and got before the judge, they were pleased and they fell on deaf ears, quite frankly. He, being the immigration judge, did not want to hear any of their explanations and he was not willing to take any testimony regarding the chance of success. As Sule may have, if he were allowed to proceed with the I-130 petition as well as his petition to adjust his status. When he received the negative decision, the petitioner, he appealed to the Board of Immigration Appeals. And after his appeal went to the Board of Immigration Appeals, they rejected his appeal. They adopted the reasoning of the immigration judge and then they decided that he was indeed removable and there was no abuse of discretion as far as not allowing him to get his continuance in order to try to pursue the new I-130 petition. He claimed that the judge should have given him a chance. It was only his first appearance. But the Board of Immigration Appeals, they disagreed. They just accepted the immigration judge's take on the situation and they denied his petition. So after that denial, that's when he appealed his case to Your Honor because he believed there was definitely an abuse of discretion. And that's why he's here now before you today looking for some meaningful relief, something he has not been able to take advantage of. Okay, your time has expired, Mr. Nemeka. So we'll hear from Ms. Smith. Yes, Your Honor. Thank you, Your Honor. May it please the Court. Holly Smith on behalf of the Attorney General. The agency acted well within its considerable discretion in denying petitioner's request for a continuance where he failed to show the required due cause given that he was not the beneficiary of even a pending visa petition before the United States Citizenship and Immigration Services. Was he represented at any time? Yes, he was, Your Honor. He was represented throughout proceedings by the same attorney law firm who now represents him. He had that representation throughout his proceedings before USCIS. Even during the time that he was in immigration detention? That is correct, Your Honor. He had the attorney undertook filing the first petition, received the notice of intent to deny from USCIS, prepared the response along with petitioner's wife, and then proceeded into the removal proceedings that were initiated by the Department of Homeland Security. So he's been represented throughout, and he's had the same attorney throughout. The case has moved around from place to place. You have immigration courts here in Chicago, and where was the case before, in Pennsylvania? Philadelphia, Your Honor. All right. And when he was in Indianapolis, there's no immigration courts there? No, Your Honor. Those proceedings are handled out of the Chicago office. Okay. Throughout petitioner's arguments, he first makes a point of something that was referenced by, Your Honor, his detention. It's important here to focus on the timeline. His detention did not keep him from filing either an appeal, which he admits and concedes before the agency, that he chose not to do. It also did not keep him from filing a second petition before he appeared before the immigration judge. He was taken into detention at the time of his hearing on the first immediate relative visa petition in October 2011. He was detained following that interview, and the notice of intent to deny was issued to his wife, who was the petitioner for the visa petition. It was issued during that detention. However, approximately three weeks after that notice of intent to deny, during the time that he still had to prepare his response to that notice, he was released from detention. And he was not in detention throughout any appeal period he would have had after the denial in September 2012. So that did not impact his ability through counsel to challenge initially any denial of a first petition. The fact, the dispositive fact, upon which the agency relied in this case to deny petitioner's continuance was that he did not have a pending visa petition. The government is unaware of any case law from either the Board of Immigration Appeals or this court that says it is an abuse of discretion to deny a continuance request where there is no pending visa petition. Petitioner made the comment in briefing that the filing of the second petition, which approximately 10 months had elapsed from the denial of the first until he appeared before an immigration judge, he said that that filing was imminent. However, I cannot find any case law that says an imminent filing means that the visa petition is pending or that is an abuse of discretion to deny based on an allegation of an imminent filing. The dispositive fact here is that there was no pending visa petition. Thus, petitioner could not meet the threshold for adjustment of status. He could not show, satisfy the focus of the inquiry as laid out in HAJME for a continuance that he would ultimately succeed in any manner on an adjustment application. Therefore, the agency acted within its considerable discretion and properly denied his continuance request. If the court has no questions for the government, I'll rest on our briefs and ask that the petition be denied. Okay. Thank you, Ms. Smith. Mr. Nemeka, your time has expired. If you'd like a minute, you may have it. No, Your Honor. We rest on our arguments. Okay. Well, thank you very much to both parties. And the court will stand in recess. Thank you, Your Honor. Thank you.